# 𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫

## J. S. Ashworth, Trustee, and in His Own Right v. S. J. Fleenor and Irving Whaley.

September 10, 1941.

Record No. 2417.

Present, All the Justices.

The opinion states the case.

*Daniel T. Sargeant* and *J. S. Ashworth,* for the appellants.

*Quillen & Carter,* for the appellees.

HUDGINS, J., delivered the opinion of the court.

This controversy involves the rights of parties under a conditional sales contract. From an adverse decree the assignee of the vendee obtained this appeal.

Irving Whaley paid $600 in cash and gave a note for $200, due September 21, 1937, to S. J. Fleenor as the purchase price for one A-2 sawmill outfit. To secure payment of the note, the parties executed a conditional sales contract, whereby it was agreed that title to the property should remain in Fleenor until the note, with interest, was paid. The contract was recorded in Brunswick county, where Whaley intended to manufacture standing timber into lumber.

J. S. Ashworth, Whaley's father-in-law, advanced him approximately $3,000 to be used in the manufacture of lumber. On July 10, 1937, Whaley executed a bill of sale conveying certain personal property, including the sawmill outfit, to Ashworth as trustee, as security for the payment of the sums advanced and to be advanced. The sawmill operation proved to be unsuccessful. Whaley, with Ashworth's consent, rented the outfit to one L. W. Kidd, who, without Fleenor's consent, moved the outfit across the State line into Warren county, North Carolina.

Whaley failed to pay the $200 note at maturity. Fleenor placed it in the hands of George M. Warren, an attorney of Bristol, Virginia, for collection. Mr. Warren discussed the payment of the obligation with Mr. Ashworth, who informed Warren that he had acquired an interest in the sawmill outfit subject to the lien held by Fleenor. Later the note was sent to L. J. Hammack, an attorney in Lawrenceville, Brunswick county, for collection.

Mr. Ashworth ascertained that Mr. Hammack contemplated repossessing the property and went to Lawrenceville to discuss the matter with him. Tentative arrangements for the payment of the note by a third party did not materialize. Thereafter Mr. Ashworth told, and subsequently wrote Mr. Fleenor that he would pay the obligation.

Fleenor, without notice to Ashworth, took peaceful possession of the property and moved it from Warren county, North Carolina, to Scott county, Virginia. He made no attempt to sell it or to ascertain its market value at the time of repossession, but treated it and used it as his own.

When Ashworth ascertained that Fleenor had, without notice to him, repossessed the property, he, by letter bearing date July 27, 1938, offered to pay him the $200 and costs, or to take $250 for his interest in the property. Fleenor made no reply to this letter. Thereafter Ashworth, as the assignee of Whaley, instituted this suit under Code, sec. 5190, praying for relief in the following language: ''By reason whereof there is an implied obligation upon the part of said S. J. Fleenor to pay complainant a fair price for said machinery thus converted to his own use and that a fair price complainant alleges to be $800.00 subject to a credit of the $200.00 balance due said Fleenor and for which complainant prays judgment.''

The contract of sale provides: ''If default is made in the payment of any of said notes, * * * or if the vendee attempts to sell or remove the same from the location herein specified without the written consent of the holder of said notes, then such holder may declare all said indebtedness due and take possession of said property and sell the same at public or private sale at such price and on such terms as to cash or credit as such holder shall deem best and pay all expenses thereby incurred out of the proceeds of said sale *and apply the balance thereof on said indebtedness.*'' (Italics supplied.)

Fleenor contends that the removal of the sawmill outfit from Brunswick county to Warren county, North Carolina, and the failure of Whaley to pay the $200, vested in him an absolute right to the property regardless of its value at the time and place of repossession. This view is expressed in the answer to the bill, in which it is said:

"That your respondent did take possession of said mill and remove it, which he had a right to do; and

"That your respondent alleges that the said J. S. Ashworth had full and complete knowledge of all the proceedings that were taken in this case, and did nothing to protect his interest in the same; and

"That your respondent here alleges and avers that the said J. S. Ashworth, trustee, and in his own right, has no further interest in the subject matter of this suit."

While Whaley was named a party to the complainant's bill, no affirmative relief was sought against him either by the complainant or Fleenor, the other respondent.

On the issues stated, the trial court entered judgment against Whaley in Fleenor's behalf for $200, attorney fees, interest and the cost of transporting the property to Scott county, and declared the property described in the conditional sales contract to be the absolute property of Fleenor unless Ashworth, within thirty days from the date of the decree, paid Fleenor the sums stated in the judgment against Whaley, whereupon title would vest in Ashworth.

Fleenor, in his brief, states his contentions thus:

"Ashworth becomes very much like the defendant in an action of detinue, and although this is not an action of detinue, yet we feel that the principle enunciated under section 5801 of the Code of Virginia is applicable to this case, and the honorable trial court, in adjudicating the rights of all parties must have necessarily applied this principle in the decree entered in said cause."

When a vendor in a conditional sales contract or chattel mortgage seeks, by action of detinue, to recover the specific property involved, section 5801 gives the vendee in such an instrument the choice of two courses. He may pay the judgment and retain the property, or he may surrender the property, which act of surrender cancels the debt. *Lloyd* v. *Federal Motor Truck Co.*, 168 Va. 72, 190 S. E. 257.

The statute was enacted for the benefit of the vendee. It gives him, not the vendor, the right of election. It provides that, " * * * , when in any such action * * * the plaintiff shall prevail under a contract which, regardless of its form or express terms, was in fact made to secure the payment of money to the plaintiff or his assignor, judgment shall be for the recovery of the amount due the plaintiff thereunder, or else the specific property, * * * and the defendant shall have the election of paying the amount of said judgment or surrendering the specific property * * * ."

The vendor chose to repossess the property, but he neither canceled the indebtedness nor accounted to the vendee or his assignee for the value of the property at the time and place of repossession. The decree of the trial court gives him the property and a judgment against the vendee; or, if Ashworth exercises the right given him by the decree and pays the debt, the vendor will have received full payment of the purchase price and will still hold a judgment against the vendee, a result not authorized by the provisions of the statute or any rule of law.

Ashworth, as assignee of the vendee, has consistently maintained, both in his conversation with the vendor and in his letters to him, that he was entitled to exercise the right of his assignor to pay the balance of the unpaid purchase price and obtain the specific property involved. He was prevented from the exercise of this right by the action of the vendor in seizing the property and contending that Ashworth had no interest in it.

After Fleenor had repossessed the mill, it was seriously damaged by fire. The extent of the damage is in dispute. This is immaterial, as the evidence conclusively establishes the fact that when Fleenor repossessed the sawmill outfit, he did it with the intention of converting it to his own use and not selling it for its then market value and accounting for the proceeds in accordance with

the provisions of his contract. Under the circumstances, the measure of complainant's recovery is the difference between the value of the sawmill outfit at the time and place of conversion and the amount of the debt and interest to that date. See 37 A. L. R. 112.

■ "As a rule, where a seizure of the property by the mortgagee is unlawful, he is liable to the mortgagor or those suing in his right for the full market value of the property at the time of the seizure and will not be credited with the expense of keeping it or the amount by which its value has decreased since his taking possession." 10 Am. Jur. 831.

The prayer of the petition filed in this court is that the decree of the trial court be reversed, and that this court "enter such decree as the Circuit Court of Scott county should have entered."

Ordinarily this court would enter final judgment in accord with the prayer of complainant's petition. But complainant alleges that the fair market value of his property at the time of conversion was $800. L. W. Kidd, in answer to interrogatories submitted by complainant, stated that, in his opinion, the mill "was worth approximately $1,500 at the time. The mill was worth that much or more at the time it was removed and taken by Mr. S. J. Fleenor, for reason that while the mill was in my possession, I took excellent care of it, made some needed repairs, and got it running in good condition." Fleenor stated that at the time he took the mill over it was not worth over $200, and at the time of the hearing, after it had been damaged by fire and repaired, he stated that he "wouldn't want to pay more than $400 for it."

■ Under these circumstances, we think that the decree of the trial court should be reversed *in toto*, and the case remanded with directions to the trial court to ascertain the fair market value of the property at the time (April, 1938) and place it was repossessed by Fleenor. When this amount has been ascertained, the balance of

the unpaid purchase money, $200, with interest to that date, should be deducted, and complainant given final judgment for the difference, as requested in the prayer of his bill.

*Reversed and remanded.*